**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Board of Trustees of the Ohio** | ) | **CASE NO. 1:06 CV 842** |
| **Carpenters' Pension Fund on behalf** | ) | |
| **of the Ohio Carpenters' Pension Fund,** | ) | |
| **et al.,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| **Plaintiffs,** | ) | |
| vs. | ) | |
| | ) | |
| **Charles S. Bucci,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**Introduction**

This matter is before the Court upon plaintiffs' appeal of the Memorandum of Opinion and Order of United States Bankruptcy Court for the Northern District of Ohio (hereafter, the bankruptcy court) issued on March 24, 2006. For the following reasons, the decision of the bankruptcy court is AFFIRMED.

**Facts**

In January 2005, debtor, Charles Bucci, (hereafter, Bucci or appellee), filed a Chapter 7 bankruptcy petition. Bucci is the President and sole shareholder of Floors by Bucci, Inc. He was a signatory to the Northeast Ohio Carpenters' Collective Bargaining Agreement (CBA). The

1

CBA required that Bucci's company make monthly employer contributions to the ERISA funds established by the CBA and to effect certain employee withholdings.

Bucci's bankruptcy petition scheduled the Ohio Carpenters' Pension Funds (a multiemployer ERISA plan maintained pursuant to the CBA and governed by various trust agreements) as a creditor with a debt in the amount of $99,382.23 representing unpaid employer fringe benefit contributions, employee withholdings and delinquency assessments. Bucci received a discharge of his debts on April 21, 2005.

On April 21, 2005, Board of Trustees of the Ohio Carpenters' Pension Fund on behalf of the Ohio Carpenters' Pension Fund, et al. (hereafter, appellants) filed an adversary proceeding against Bucci entitled Complaint Objecting to Discharge of Debt Owed to Carpenters' Service Office Pursuant to 11 U.S.C. § 523(a)(4). The Complaint alleged that Bucci should be treated as the alter ego of Floors by Bucci, Inc. because Bucci was the sole shareholder, director and officer of the company and failed to separate his personal finances from the company finances, and that he breached the CBA by failing to make the employer contributions or effect the wage withholdings.

Bucci did not challenge the alter ego claim before the bankruptcy court. Nor did he dispute his failing regarding the wage withholdings and employer contributions debts.

The Complaint asked the bankruptcy court to find that the debt owed to the Ohio Carpenters' Pension Funds is nondischargeable under § 523(a)(4) of the Bankruptcy Code. Following summary judgment briefing, the bankruptcy court issued its Memorandum of Opinion and Order of March 24, 2006. The bankruptcy court found that the debt arising from the failure to remit withholdings is nondischargeable and the debt relating to unpaid employer contributions

is dischargeable.  The former finding is not at issue herein as appellants have only challenged the court's finding that the employer contributions debt is dischargeable.

Appellants and appellee have briefed the issue which is now pending before this Court.

### Standard of Review

Bankruptcy Rule 8013 sets forth the standard of review to be applied by district courts in resolving bankruptcy appeals:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

"On the basis of this Rule, the Court must accept [the bankruptcy judge's] findings of fact unless they are found to be clearly erroneous." *In re G-P Plastics, Inc.,* 320 B.R. 861, 864 (E.D. Mich. 2005).  "However, her conclusions of law are not entitled to the same deference and are subject to de novo review."  *Id.* (citing *In re Batie*, 995 F.2d 85, 88 (6th Cir.1993)).  *See also In re Wolf*, 331 B.R. 256, 260 (E.D. Mich. 2005) (citations omitted) ("The appropriate standard of review of the bankruptcy court's conclusions of law is de novo.  In contrast, findings of fact entered by the bankruptcy court will not be set aside unless clearly erroneous, with due regard given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.")

### Discussion

Appellants argued to the bankruptcy court that the debt owed to the Ohio Carpenters' Pension Funds is nondischargeable pursuant to § 523 of the Bankruptcy Code which provides:

> **§ 523. Exceptions to discharge**
>
> (a) A discharge under section 727... of this title does not discharge an individual debtor from any debt--

3

(4) for ... defalcation while acting in a fiduciary capacity, embezzlement, ... .

11 U.S.C. § 523(a)(4).  Appellants argued that Bucci, acting in his fiduciary capacity, failed to remit the employer contributions to the funds, and the misappropriation and misuse of the monies entrusted to him constituted defalcation and embezzlement.

The bankruptcy court rejected the argument.  Rather, the bankruptcy court concluded that the debt for the employer contributions is not a debt for defalcation or embezzlement, but merely breach of a contractual obligation.  Upon *de novo* review, this Court agrees.

The bankruptcy court relied on *In re Blaszak,* 397 F.3d 386, 390 (6th Cir. 2005) (internal citations omitted), which states,

> This Circuit has defined defalcation to encompass embezzlement and misappropriation by a fiduciary, as well as the failure to properly account for such funds. In order to find a debt nondischargeable under § 523(a)(4) due to defalcation, we require proof by a preponderance of the evidence of the following: (1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss.

The bankruptcy court further recognized *Blaszak's* statement that "the defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific *res* in the hands of the debtor."  *Id*.  And, to establish the existence of an express or technical trust the creditor must show: "(1) an intent to create a trust; (2) a trustee; (3) a trust *res*; and (4) a definite beneficiary."  *Id.* at 392 (citations omitted)

The bankruptcy court found that Bucci never acted as a trustee over the employer contributions and, therefore, there was no defalcation.  Specifically, the bankruptcy court determined that there was no express or technical trust because the record did not demonstrate that the parties intended that Bucci act as a trustee of unpaid contributions or as a trustee of trust funds. Rather, Bucci was only contractually obligated to pay the employer contributions.  While

4

the governing trust agreements provided that the debt for unpaid employer contributions (and concomitant breach of contract claim) became an asset of the trust funds upon delinquency, the bankruptcy court did not find this enough to make Bucci a trustee of the unpaid employer contributions. Rather, the parties must have intended that Bucci act as trustee. The bankruptcy court concluded that nothing in the record indicated that Bucci was required to hold the employer contributions in trust either before or after they became due and owing.

Appellants assert that the bankruptcy court erred in finding that the CBA and the various trust agreements are merely contractual in nature. Rather, appellants contend, the bankruptcy court should have applied ERISA law which imposes more obligations on the parties to qualified agreements than are imposed by traditional contract law.[1]

Appellants rely heavily on *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel*

---

[1] For instance, ERISA provides that the fund is entitled to recover the following where an employer is delinquent in making employer contributions under the terms of the plan:
    (A) the unpaid contributions,

    (B) interest on the unpaid contributions,

    (C) an amount equal to the greater of--

        (i) interest on the unpaid contributions, or

        (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E) such other legal or equitable relief as the court deems appropriate.

5

*Erection, Inc.,* 352 F.Supp.2d 794 (E.D.Mich. 2004), a case brought pursuant to ERISA which did not involve a bankruptcy.  The court agreed with plaintiffs that defendant's president should be held personally liable for the company's unpaid fringe benefit contributions under the CBA and determined that he acted as an ERISA fiduciary.  In doing so, the court decided that the unpaid contributions became vested plan assets when they became due[2] and that the president exercised discretionary control and authority over the payment of contributions in that he admitted to having responsibility over the decision of whether or not to pay the ERISA benefit contributions.

Appellants argue that the analysis of nondischargeability in the bankruptcy court where a multiemployer pension fund is a creditor cannot be undertaken without incorporating the rights and obligations promulgated by ERISA.  Appellants contend that ERISA fiduciaries are fiduciaries for purposes of § 523(a)(4), pointing to *In Re Holman,* 325 B.R. 569 (E.D.Ky. 2005).  There, plaintiff filed an adversary proceeding in the debtor's bankruptcy case to determine dischargeability of the debt which arose from unpaid employee contributions.  The adversary complaint alleged that the debtor (president and sole shareholder of the employer company) was an ERISA fiduciary who violated ERISA's provisions.  Plaintiff further alleged that the debt that the debtor owed the ERISA plan was nondischargeable under Bankruptcy Code § 523(a)(4) which precludes discharge of debts for defalcation and embezzlement.  The plaintiff filed a motion for mandatory withdrawal of reference of the adversary proceeding in the district court because the proceeding involved interpretation of ERISA.  The district court declined to

---

[2] The court recognized that the Sixth Circuit has yet to consider when unpaid benefit contributions become plan assets, but relied on the law of other circuits which have decided this issue.

6

withdraw the reference, stating that Sixth Circuit precedent existed to provide the bankruptcy court law regarding the definition of an ERISA fiduciary and the breach of a fiduciary's duties. The bankruptcy court subsequently agreed with plaintiff that the debtor was an ERISA fiduciary who was not entitled to discharge because he committed defalcation in relation to the unremitted employee contributions for which he had responsibility and over which he had control as a fiduciary. *Chao v. Holman (In Re Holman),* No. 04-5540 (Bankr. E.D.Ky. March 21, 2005).

Appellants assert that under the ERISA law which they urge this Court to apply, Bucci is not entitled to discharge of the debt because the delinquent benefit contributions are plan assets and Bucci exercised discretionary control or authority over the assets by retaining them.

Upon *de novo* review, this Court agrees with the bankruptcy court that it is not enough to determine that Bucci is a fiduciary within the meaning of ERISA. (Memorandum of Opinion and Order at 12) The Sixth Circuit has not decided whether an ERISA fiduciary is also a fiduciary under § 523(a)(4), and there is a split in authority among the circuits. This Court agrees with the reasoning of those cases which find that where the record evidences only a contractual obligation to pay but no intent to act as a trustee, the employer is not a fiduciary of the monies owed.

In *In Re Luna,* 406 F.3d 1192 (10th Cir. 2005), trustees of ERISA-covered benefit funds filed an adversary complaint against a Chapter 7 debtor employer, who was a signatory to the CBA, seeking a determination that debt arising from unpaid monthly employer contributions owed by the employer to the funds pursuant to the CBA fell within § 523(a)(4)'s discharge exception for fiduciary fraud or defalcation. The Tenth Circuit agreed with the bankruptcy court that no defalcation had been committed and the debt was dischargeable. Although the court

7

determined that the contractual right to collect unpaid contributions is an asset of an ERISA plan, it further determined that under ERISA law the company was not a fiduciary of the monies owed merely because it breached its contractual obligations to the fund.

In *Hunter v. Philpott,* 373 F.3d 873 (8th Cir. 2004), the court was presented with the issue of "whether an ERISA fiduciary is necessarily also a fiduciary for the purposes of § 523(a)(4)." *Id.* at 875.  While recognizing that the Ninth Circuit in *In Re Hemmeter,* 242 F.3d 1186 (9th Cir. 2001), had held that an ERISA fiduciary is *ipso facto* a fiduciary for purposes of § 523(a)(4), the court rejected the conclusion that a "simple determination that an individual is an ERISA fiduciary is enough to satisfy the requirements of § 523(a)(4)." While the bankruptcy petitioner in *Philpott* was not himself a signatory to the CBA, the court rejected the conclusion that he as co-owner of the corporation who was a fiduciary of ERISA funds because he was in control of the ERISA plan's assets was, accordingly, a fiduciary under § 523(a)(4).  The term "fiduciary" in § 523(a)(4) refers only to trustees of "express trusts" and the record, like here, did not show an intent to hold the monies in trust.  The corporation was not explicitly required to hold income earned as a result of a member's labor in trust for the satisfaction of liabilities owed to the funds. The co-owner of the corporation was, thus, not legally obligated to hold any particular property for the benefit of the funds.

*In Re Engleman,* 271 B.R. 366 (Bankr.W.D.Mo. 2001), similarly found that a business proprietor was not acting in the fiduciary capacity required by § 523(a)(4) when he failed to make contributions required by the CBA to the ERISA funds.  The debt was, therefore, dischargeable as no defalcation can arise in the absence of a pre-existing fiduciary relationship. Because the parties must declare their intent to create a trust, followed by the creation of the trust

8

and a trust *res,* a mere contractual relationship will not establish the existence of the required fiduciary relationship. While the employer admitted that he owed the debt to the funds for failure to make the contributions, the court found that a debtor/creditor relationship, without more, does not give rise to a fiduciary relationship.

*Bowman v. Hollander,* 1992 WL 373172 (N.D.Ohio 1992), affirmed a bankruptcy court order rejecting the employees' claim that a company's failure to pay ERISA severance benefits fell within the scope of § 523(a)(4). The court disagreed with the employees that ERISA created a fiduciary obligation sufficient to trigger the application of § 523(a)(4) because no express trust had been created as required by that statute.

Based on this reasoning, this Court finds that it is not enough to determine that Bucci is a fiduciary for purposes of ERISA so as to render the debt nondischargeable under the Bankruptcy Code.

The bankruptcy court additionally found that the unpaid employer contributions did not meet the elements of a debt for embezzlement, recognizing that

> Federal law defines 'embezzlement' under section 523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.

*In re Brady*, 101 F.3d 1165, 1172-1173 (6th Cir. 1996).

The bankruptcy court determined that there was no evidence showing that there was any entrustment to Bucci of employee or trust funds property. While Bucci was contractually obligated to pay the employer contributions, his failure to do so is not embezzlement but breach of contract.

9

Appellants contend that the unpaid contributions become plan assets when the contributions become due and that Bucci, entrusted with the assets, unlawfully retained them instead of remitting them as required.

While the bankruptcy court may have agreed that the delinquent contributions became plan assets, as discussed above it rejected the notion that Bucci became trustee of the assets. Rather, he breached his contractual obligation.  This Court agrees.

**Conclusion**

For the foregoing reasons, the bankruptcy court's Memorandum of Opinion and Order is affirmed.

IT IS SO ORDERED.


    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 8/14/06

10